UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| WILLIAM MOORE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:19-cv-792(SRU) |
| | : | |
| PAROLE OFFICER WENDY JONES, et al., | : | |
| Defendants. | : | |

## **INITIAL REVIEW ORDER**

The plaintiff, William Moore, formerly confined at Osborn Correctional Institution, resides in Middletown, Connecticut. He has filed the instant civil rights action under 42 U.S.C. § 1983 against Parole Officers Wendy Jones, Richard Gibbons and John Doe (collectively, "Defendants"), seeking monetary damages from Defendants in their individual capacities. As set forth in his complaint, Moore principally alleges that Defendants remanded him back to a Department of Correction prison facility in retaliation for an inmate grievance that he filed against Jones. Moore asserts claims under the First and Eighth Amendment, as well as claims for intentional infliction of emotional distress and false imprisonment. For the reasons set forth below, the complaint is **dismissed** in part.

### I. Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and conclusory allegations will not suffice, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

## II. Allegations

On July 3, 2017, Department of Correction officials transferred Moore to Sierra House, a community placement facility, where Defendants were assigned.[1] *See* Compl., Doc. No. 4, at ¶¶ 5, 8. Sierra House contracts with the Department of Correction to house prisoners on parole. *See id.* at ¶ 8. During his confinement at Sierra House, Moore enrolled in Gateway Community College as a full-time student and was hired for work study on July 15, 2017. *Id.* at ¶¶ 9–10. On July 22, 2017, Moore began to work full-time at Price Right. *Id.* at ¶ 10.

At an unspecified time, Moore became eligible to be furloughed from Sierra House to a private residence. *Id.* at ¶ 11. Moore's sponsor, Khalilah Escoffery, visited Sierra House to complete the necessary paperwork for the furlough; Moore's counselor then reviewed and forwarded the paperwork to Parole Officer Jones. *Id*. at ¶¶ 11, 15.

---

[1] Although the complaint specifically states that "Defendant was transferred to the Sierra House," it appears based on the surrounding allegations that Moore intended to state that he, the plaintiff, was transferred. *See, e.g.*,

On August 29, 2017, Moore was told to notify Price Right that he would be late to work because Jones wanted to speak with him. *Id.* at ¶ 12. Jones asked Moore questions, and indicated that she had granted his request for transitional parole but had denied his request to be furloughed to his Escoffery's home. *See id.* at ¶ 13. Jones specifically stated that she "was not allowing him [to] furlough[] with anyone named Khalilah anything." *Id.* When Moore asked for an explanation, Officer Jones became "belligerent and combative," and yelled "because [I] can . . . now get the f— outta here." *Id.* Plaintiff left feeling "extreme anger." *Id.* Moore thereafter filed an inmate grievance regarding Officer Jones's behavior, placing it in the administrative remedy box at Sierra House. *Id.* at ¶ 14.

Moore also asked Escoffery to call the New Haven Parole Office to submit his complaint about Officer Jones's conduct. *Id.* at ¶ 15. The New Haven Office advised Escoffery to contact the Wethersfield Parole Office about the issue, and Escoffery did so. *Id.*

On September 1, 2017, the assistant director of Sierra House asked to speak to Moore about his grievance in her office. *Id.* at ¶ 16. When Moore stepped into her office, Defendants arrested Moore. *Id.* at ¶ 16. When Moore asked why he was being arrested, Jones replied "[because] you wrote a grievance against me." *Id.* at ¶ 18. Gibbons echoed Jones's statement, saying "because[] you complained to the office in Wethersfield about my friend." *Id.* at ¶ 19. John Doe then stated, "ain't no one gonna write up any one of us up and not pay," and Gibbons reiterated, "you make a complaint against one of us . . . it's the same as having an issue with all of us." *Id.* at ¶ 20.

Jones then said, "we are above the law! We cannot be stopped [because] we are your Judge and jury." *Id.* at ¶ 21. Laughing, John Doe continued, "and we find you guilty of being a

complainer." *Id.* Moore felt "fear" and "depressed." *Id.* at ¶¶ 19–20. Defendants proceeded to "take [Moore] to Jail and incarcerated him." *Id.* at ¶ 21.

Jones also wrote a disciplinary incident report against Moore. *Id.* at ¶ 22. The hearing officer, however, dismissed the report as "fraudulent." *Id.*

## III. Discussion

### A. Eighth Amendment

In his statement of legal claims, Moore contends that Defendants' acts or omissions violated his rights under the Eighth Amendment. *Id.* at ¶ 28. In the context of a prisoner's conditions of confinement, conditions that are "restrictive and even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Nonetheless, although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton" pain or which result in the "serious deprivation of basic human needs" or "the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an incarcerated plaintiff must demonstrate both an objective and a subjective element. To meet the objective element, the plaintiff must allege that he or she was incarcerated under conditions that resulted in a "sufficiently serious" deprivation of a "human need[]." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. To meet the subjective element, a plaintiff must allege that the defendants possessed culpable intent; that is, that the defendants must have known that the plaintiff faced a "substantial risk of serious harm"

4

and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837.

Here, Moore alleges that Defendants' acts and omissions caused him to lose Pell grant program money, full-time employment, and "college schooling." Compl., Doc. No. 4, at ¶ 24. Those losses, however, do not constitute deprivations of basic human needs. Moore further alleges that he suffered "emotional pain and suffering, depression, mental anguish, false imprisonment, retaliation, fear, humiliation, [and] unlawful restraint." *Id.* at ¶ 25. Those conclusory allegations likewise fail to plausibly state that Defendants deprived him of a basic human need or subjected him to conditions that posed a substantial risk of harm to his health or safety. Thus, Moore has not asserted facts to meet the objective component of an Eighth Amendment claim. The Eighth Amendment claim is therefore dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**B.    First Amendment**

In addition, Moore avers that Defendants engaged in an "unlawful remand arrest" in retaliation for the grievance that he filed against Officer Jones. Compl., Doc. No. 4, at ¶ 27. To state a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal citation omitted).

Here, the complaint states that Moore filed a grievance, which qualifies as protected conduct. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("the filing of prison

grievances is a constitutionally protected activity") (internal citation omitted). Therefore, Moore has met the first element of a retaliation claim.

Moore has also adequately pled the second element: adverse action. An adverse action is defined as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Id.* at 353. In the present case, Moore asserts that Defendants arrested and remanded him back to a Department of Correction prison facility, and that Officer Jones issued a disciplinary report against him. Moore also alleges that the decision to arrest and remand him interfered with his pursuit of a college degree, Pell grant program money, and a full-time job. Those consequences, I conclude, rise to the level of "adverse action[s]."

Finally, Moore has sufficiently established the third element: causation. "In order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Davis*, 320 F.3d at 354 (internal citation omitted). The complaint alleges that Defendants explicitly told Moore that they were arresting him because he had complained about Officer Jones's conduct. Accordingly, Moore has alleged sufficient facts to demonstrate a causal connection between the adverse action and his exercise of a First Amendment right.

For the foregoing reasons, Moore has plausibly alleged a First Amendment retaliation claim against Defendants. The First Amendment claim will therefore proceed against Defendants in their individual capacities.

### C. Intentional Infliction of Emotional Distress

Moore also brings an intentional infliction of emotional distress ("IIED") claim against

Defendants. Compl., Doc. No. 4, at ¶ 28.  To prevail on such a claim, a plaintiff must satisfy four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Gomez v. City of Norwalk*, 2018 WL 780213, at *8 (D. Conn. Feb. 8, 2018) (internal citations omitted).  Liability for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Board of Educ. of Town of Stonington*, 254 Conn. 205, 210–11 (2000).

Here, Moore claims that Defendants' actions and omissions were "extremely outrageous and shocking," and that Defendants knew or should have known "that they were causing the plaintiff pain, suffering, physical and emotional injury."  Compl., Doc. No. 4, at ¶ 29.  Nonetheless, the facts as alleged do not suggest that Defendants' retaliatory conduct in arresting Moore rose to the level of extreme and outrageous behavior that exceeded the limits of decency usually tolerated by civilized society.  *See, e.g.*, *Sorrell v. Cty. of Nassau*, 162 F. Supp. 3d 156, 172 (E.D.N.Y. 2016) (dismissing IIED claim because the defendants' arrest of plaintiff, which led to the plaintiff's "incarcerat[ion] at a tough prison for approximately four months . . . [his] suspen[sion] from a work release program . . . [a delay in] his parole [release] date," as well as "anxiety and depression," did not rise to the level of "outrageous").  Moore has therefore not stated a plausible claim of intentional infliction of emotional distress under Connecticut law, and the claim is dismissed in accordance with 28 U.S.C. § 1915A(b)(1).

7

### D. False Imprisonment

Although not listed in his description of legal claims, Moore asserts throughout the complaint that Defendants "effected a false arrest/remand." *See, e.g.*, Compl., Doc. No. 4, at ¶ 5. Under Connecticut law, "'[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)).

In this case, the complaint states that "[d]uring all times mentioned herein, the plaintiff, William Moore, was being incarcerated within the Sierra House D.O.C." Compl., Doc. No. 4. at ¶ 4. The complaint specifies that Sierra House is "contracted to incarcerate inmates in the New Haven community through the Conn. Dept. of Corr." *Id*. at ¶ 8. Because Moore was therefore under the custody of the Department of Correction at the time of his arrest, his remand back to a Department of Correction prison facility does not constitute an illegal confinement. *See McGowan v. United States*, 94 F. Supp. 3d 382, 390 (E.D.N.Y. 2015), *aff'd*, 825 F.3d 118 (2d Cir. 2016) (dismissing false imprisonment claim because plaintiff, who was confined to a halfway house, "was already in custody and thus could not be arrested by the BOP, his custodian"). Accordingly, his false imprisonment claim is dismissed.

**It is hereby ordered that:**

**(1)** The Eighth Amendment claim and the state law claims for false imprisonment and intentional infliction of emotional distress are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The First Amendment retaliation claim will proceed against Defendants in their individual capacities.

**(2)** Because Moore has paid the filing fee, he is responsible for effecting service of

the complaint on all of the defendants in their individual capacities in accordance with the requirements of Rule 4, Fed. R. Civ. P. Within thirty days of the date of this order, Moore shall effect service of the complaint on Parole Officer Wendy Jones and Parole Officer Richard Gibbons in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the complaint, and a copy of this order to each defendant. Moore shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to the defendants in their individual capacities. If a defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** The Clerk shall send Moore instructions for service of the complaint on the defendants in their individual capacities, together with three copies of the complaint, three copies of this order, three blank Notice of Lawsuit forms and three blank Waiver of Service of Summons forms. Moore shall file the signed Waivers of Service of Summons forms that he receives from the defendants in their individual capacities with the Clerk.

The court informs Moore that he will have to conduct discovery to determine the first and last name of Parole Officer John Doe in order to serve John Doe with a copy of the complaint. Pursuant to Rule 4(m), Fed. R. Civ. P., Moore must serve Parole Officer John Doe within ninety days of the date of this order. The court will dismiss the case without further notice as to the Doe defendant if Moore fails to serve him in his individual capacity within the time specified under Rule 4(m).

**(4)** Defendants Gibbons, Jones and Doe shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them by Moore. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(5)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(6)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(7)** The Clerk shall send a copy of the complaint and this order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

**(8)** The Clerk shall enter the Standing Order Re: Initial Discovery concerning inmate cases initiated by self-represented inmates and shall send a copy to the plaintiff.

So ordered.

Dated at Bridgeport, Connecticut, this 9th day of January 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge